Ms. Taylor? Yes, Your Honor. Good morning. Good morning. Good morning, Your Honors. Laura Taylor on behalf of the United States. Just for the record, I am on the briefs as Laura Rottenborn. I was recently married and I am yet to change my name. Best wishes to you. Thank you very much. I appreciate that, Your Honors. I'm here this morning on behalf of the United States and may it please the Court. This Court should reinstate the indictment against Mr. Sanchez because under this Court's decision in Herrera-Pagoda, Mr. Sanchez's collateral attack on his prior 2011 removal order must fail as a matter of law. The only prong of Mr. Sanchez's collateral attack under Section 13-2060 that's at issue in this case is the third prong known as fundamental unfairness. And to prove fundamental unfairness, Mr. Sanchez bears the burden of proving both a due process violation, and that's a violation of the Due Process Clause of the Fifth Amendment of the Constitution, and prejudice that results directly from that due process violation. Below in the District Court, Mr. Sanchez alleged only one prejudicial due process violation, and that was an alleged violation by the immigration judge by not advising Mr. Sanchez of the possibility of voluntary departure. This Court in Herrera-Pagoda, and specifically Judges Diaz, Floyd, and King, held that an immigration judge's failure to advise regarding voluntary departure is not a due process violation as a matter of law. That holding controls this case, resolves this case, requires reversal and reinstatement of the indictment. More specifically, Herrera-Pagoda confirmed three things relevant to this appeal. The first legal principle that Herrera-Pagoda confirmed is that in order to successfully launch a collateral attack under 13-2060 and the third prong fundamental unfairness, the alien must show a due process violation, that is, a violation of the Fifth Amendment's Due Process Clause. A statutory failing by the immigration judge does not automatically rise to the level of a due process violation. And as a result, because here, failure to advise an alien at a removal proceeding regarding voluntary departure is not a violation of the Due Process Clause of the Fifth Amendment. What about a due process violation of indicating the individual had weaved his appeal right when you hadn't actually discussed that with him? Yes, Your Honor. Now, of course, below in the District Court, that was not the basis for the motion to dismiss the indictment. Does it have to be? I mean, can't we look at this and look at the record as a whole and determine as to whether we should affirm it? On any basis that we find in the record? Yes, of course. What does it matter whether he raised it below? In order to establish fundamental unfairness, Mr. Sanchez I mean, in terms of waiver, does it matter really on that? We can decide it on that basis is what I'm saying. It does matter because Your Honor should not decide it on that basis because fundamental unfairness requires two findings, both a due process violation and prejudice. And so to the extent this court wished to address whether failure to advise an alien regarding his appellate rights amounts to a due process violation. There still is nothing in the record to reach the second prong regarding prejudice because You rely on prejudice for that particular argument, not the question of whether it's a due process violation. The government believes that it is that it has good arguments on both prongs, but the prejudice prong is clearly established. There is absolutely no prejudice to Mr. Sanchez as it relates to any failure to advise regarding Mr. Sanchez's appellate rights. But moreover, in Herrera Pagoda, that court also addressed this exact issue. And it's stated in Herrera Pagoda, excuse me, that even if an IJ's failure to explain voluntary departure were to effectively deprive an alien of the opportunity to appeal. That also does not mean that the removal hearing violated due process. So with respect to the first prong of fundamental unfairness, whether there's a due process violation, the Herrera Pagoda court answered that question in the negative. I don't know that I disagree with you, but I didn't see that argued in your brief. I thought that it was really quite extraordinary that you didn't talk about prejudice in your brief. I mean, you didn't talk about the due process violation. You talked about the other elements. So maybe you could show me where you said that this wasn't a due process violation in your brief. Yes, Your Honor. And forgive me because I know there are many briefs in this case as a result of the supplemental briefing. Yeah, I think that that's what I was looking at. Yes, Your Honor. You're right. There are so many. I keep reading the wrong ones. Bear with me just one moment. The other side also commented on that, that you hadn't even challenged whether or not this was a due process violation. Yes. Well, we do challenge that, Your Honor. On page three of our supplemental reply brief, we discuss how Sanchez's argument regarding the fact that failure to advise on an appellate right regarding voluntary departure is a circulant argument that collapses back into an iteration of the prior argument that the IJ was supposed to, under the due process clause, tell Mr. Sanchez about voluntary departure. And therefore, he should have also told him that he could appeal a denial of such undisclosed voluntary departure. And it's the government's position that neither of those is required under the due process clause of the Constitution. I certainly acknowledge, Your Honor, that we spent the vast majority of our reply brief addressing prejudice. And that's because the district court below stated very clearly in his opinion that although Mr. Sanchez raised the issue of appellate rights, Mr. Sanchez had not alleged in the district court that failure to advise about the appellate rights was indeed prejudicial. He had not alleged that. Can you tell me where you say that? I'm looking at, I think, the right brief. Supplemental brief of the United States. Yes. In front of me, I have our reply supplemental brief. Uh-huh. I thought you told me. Yes. Okay. Supplemental reply brief. Supplemental reply brief. Yes, Your Honor. And this is in part because… Just tell me the page. Page three. Page three. Okay. Now go ahead and make your argument. Yes. So the sentence that I quoted earlier is at the very top of page three, and then the government goes on to say, if the IJ has no constitutional duty to inform the alien about the possibility of applying for voluntary departure under Herrera-Pagoda, then there cannot be an error of constitutional dimension in failing to inform the alien that he can appeal the alleged failure to inform. In other words, it does not amount to a violation of the Due Process Clause. It's an error of constitutional dimension. And then the government goes on in its brief to say, and moreover, Mr. Sanchez cannot establish prejudice. And then we spend the rest of the… Yes, but the first sentence that you're relying on is if the IJ has no constitutional duty. But you don't say the IJ has no constitutional duty. Because the IJ has no constitutional duty to inform the alien about the possibility of applying for voluntary departure as this court held in Herrera-Pagoda, then therefore, the second part of the sentence, it cannot be an error as a matter of law. Okay, maybe not so quick, and just tell me what you're quoting from, because I don't see that language. I don't see the because. Okay, the first full paragraph on page three. Right, which says, but if the IJ has no constitutional duty to inform the alien about the possibility of applying for voluntary procedure under Herrera-Pagoda, but you don't say, okay, all right, I hear what you're saying. It says, I guess… You could have phrased it a little more. I could have put a therefore instead of a yes, Your Honor. All right. Yes, Your Honor. The government's position is that there cannot be an error of constitutional dimension, an error that fails the due process clause of the Fifth Amendment by failing to inform an alien that he can appeal the alleged failure to inform about voluntary departure if there was no constitutional requirement to inform the alien about that in the first place, that it's a logical and non sequitur. Why did you wait to the supplemental reply brief to say that? Well, Your Honor, this is a byproduct of the evolution of the issues in this case. Mr. Sanchez did not raise this issue in the district court. The district court specifically stated in his opinion that Mr. Sanchez did not raise this issue. The government is the appellant. It focused on the only issue that Mr. Sanchez did raise, which was whether or not there is a due process right to be advised of voluntary departure at a removal hearing. So the government spent the vast majority of its brief outlining all of the various case law from the other circuits on that very specific and important issue of law. After the government's brief was filed in that case, Herrera-Pagoda came out, and this case was stayed for reasons unrelated to Herrera-Pagoda. Herrera-Pagoda was then decided in the meantime and answered the question that was presented in the government's opening brief. So essentially what happened is that the entire substance of the government's opening brief was resolved by the Herrera-Pagoda decision. And then Mr. Sanchez pivoted. Didn't that sort of conceded here? Yes. So that's why I focused on this alternative argument that deals with the appeal waiver and the fact that the district court did that and didn't even discuss it. You say, well, even if you deal with the first prong of it, there's a prejudicial side of it. And I'm wondering, you going there, does that mean we now send it back for the district court in the first instance to address that presidential prong? No, Your Honor, that would not be necessary because you don't reach prejudice. Not necessary, but can we do it? Only if you find that there was also a due process violation. It requires both. That's the first instance. I thought we discussed that, that if we determine it is a due process violation for the judge to indicate you waive your appellate right, yet the record indicates he didn't even discuss the appeals with him. That looks like a due process right violation, which then you slid into what you say is really the big argument is prejudice. So send it back. And let the trial judge determine prejudice in the first instance. Is this a problem? We would certainly agree that if you reach the prejudice prong, that you could send it back for a decision on prejudice as it related to a failure to advise of an appellate right. We don't think on this record that's necessary because there is no evidence whatsoever in the record of prejudice. The prejudice record was already developed as it related to Mr. Sanchez's first complaint. No, I want to stick to due process. You said we don't get to prejudice unless we deal with that. And I thought we could probably agree that if a trial judge says you waive the right and you didn't even discuss it, that's a due process violation. The question then goes to the prejudice. And while we can look at the record and gleam and go through it, that's kind of what we let trial judges do, trial forums to do. So we send it back. Yes, Your Honor, except that Herrera-Pagoda specifically addresses the question about appellate rights rising to the level of a due process violation in the context of voluntary departure, and it rejects that notion. The Herrera-Pagoda court specifically held that an IJ's failure to explain voluntary departure, even if it effectively deprives the alien of the opportunity to appeal, does not by itself mean that the underlying removal hearing violated the due process rights. And then it goes on to quote this court's prior decision in Wilson, which likewise held that there is no constitutional due process right to discretionary relief. And the Wilson court emphasized that a collateral attack on a Section 1326 prosecution is available when the original deportation proceedings were both fundamentally unfair, that's the prominent issue here, and resulted in a denial of judicial review, noting that these are, quote, separate requirements. So looking at the prejudice question, El Shaman is a case we had, and I seem to recall we said that it's rather speculative to go look at the record, seeing whether something is prejudicial or not. Again, going to the question of why not send it back. Because in this case on collateral review, it's Mr. Sanchez's burden to prove prejudice. He had that opportunity in the district court. He chose not to present any evidence. In other cases, the alien will testify or there might be an evidentiary hearing. But in our case, Mr. Sanchez presented no evidence to the district court that is now available to this court on appellate review to find that he was prejudiced. It's not the government's burden to show that he was not prejudiced. It's Mr. Sanchez's burden to prove prejudice. And he has not carried that burden, and he has not attempted to carry that burden. And the prejudice prong existed from the inception of this motion to dismiss. Because Mr. Sanchez moved to dismiss his indictment originally based on the failure to advise a voluntary departure, claiming that was prejudicial. This court has before it all of those arguments. Mr. Sanchez did not carry his burden. He put forth no evidence in 2018 or 2011 as to how any of this was prejudicial to him. And so there would be no need to revisit that issue on remand. Mr. Taylor, wasn't there some problems here with the guy involved with the discussion about could he afford voluntary departure? And did he have the money and all those things? Was that really appropriate? Is that the business of the court? I mean, you can be offered the opportunity to voluntarily report. Maybe somebody made a loan in the money. Maybe a gift. I mean, he hit the lottery. Why should that be? If he could appeal, then that may have been resolved. Wasn't that error? Why would that have to do with it at all? The reason it matters now is because of the process. No, not then. I'm talking about then. Why was it then really an issue? Being an impecunious person, what did that have to do with it? Whether or not an alien has the financial means to actually depart the country matters in a removal proceeding because voluntary departure must be at the alien's expense. And if you're in a post-conclusion posture, the alien has to actually have to prove that he can, in fact, pay to depart. In a pre-conclusion voluntary departure posture, that inquiry is not necessary. But here, the immigration judge asked the alien, do you have the means to depart? The alien said he did not have the means to depart. He did not have money to travel back to Mexico from Virginia. The reason that matters now in collateral review is that it's Mr. Sanchez's burden to prove that he actually would not have been deported or that there's a reasonable probability he would not have been deported. And if he didn't have the money to depart, then he's not going to be able to carry his burden of showing that he wouldn't have been deported. Because if the immigration judge had entered voluntary departure and Mr. Sanchez could not afford to actually leave, then automatically by operation of law, the removal order comes into effect and Mr. Sanchez is ordered deported. So in order to avoid the deportation order, Mr. Sanchez has to pay for his own departure from the United States under his own theory of voluntary departure. And here where it's his burden to prove prejudice, it's his burden to show evidence that he would have actually done that, the fact that the only evidence in the record is that he said he had no money, he had no financial means, shows that he cannot carry his burden now on collateral review. I see that my time is up and I will reserve the remainder of my time for rebuttal unless the panel has any further questions at this time. Thank you. Thank you. Ms. Trotting? Can I ask you a question at the very outset because it was an argument that you raised in your brief? If, as I understand it, you have to show that there's a due process violation and that there was prejudice, right? Yes. You show both of those. Yes. Okay. And what you said pretty consistently in your brief, they haven't even claimed there's a due process violation. And now we have looked at page three of their supplemental reply brief, and you never had a chance to respond to that, I don't think. So tell me why that isn't an assertion of this is no due process violation. Well, Your Honor, this is not a due process violation because under the government's rationale, if that were correct, that would countermand this court's prior approach to due process violations. It would allow the treatment of discretionary relief to swallow any due process protections. But that's what we seem to say, though, in Herrera Pagada. Herrera Pagada is actually much narrower than that, Your Honor. What Herrera Pagada says is that an alien has no due process entitlement to be advised of the possibility for voluntary departure. But if you look at the court's… The right asserted here is within the discretion. That's actually never how this court or other courts have approached that question, Your Honor. Not until Herrera Pagada. Well, to the degree that Herrera Pagada is in conflict with prior decisions of this court, the prior decisions would control under the rule in United States v. McMellon. Well, that's true, but I don't think you have… You have to look at the specific statute that is being… And I don't think there's anything that is in conflict with regard to this specific statute so that you wouldn't get to the prior precedent overruling the new precedent when they're dealing with different statutes. Your Honor, I think the difference is that the rationale in Herrera Pagada is, although the government intends to expand it more broadly, is actually quite narrowly limited to that alien's only claimed issue was… His only claim to due process violation was the denial of being advised of his eligibility for voluntary departure. Now, that was a claim that we raised below. That was the primary claim we relied on below. It was not the only claim we relied on below. And, in fact, looking at both the oral argument and the briefing below, the court can see that we did raise the issue of the denial of the appeal right previously. And I agree with you on all of that, but it seems to me that they both fit under the same category, that they're dealing with not a thing of right, but a discretionary. Most immigration, most forms of relief from removal are discretionary. So when we look at this, this is not a narrow category of cases. In El Shami, which is this court's primary decision on that, the form of relief at issue was 212C relief, which is discretionary. Yet that did not invalidate Mr. El Shami's right to receive notice of his hearing. And I think, Your Honor, your concurrence in Wilson addressed this problem where you point out that the discretionary relief is not something, is not the problem here. And that's the, as in Mendoza-Lopez, the very relief at issue there was discretionary. So certainly these cases do not stand for, and Herrera-Paguada does not stand for the proposition that aliens have no due process rights where the relief at issue is discretionary. That would stand. I thought that was the rationale for the just not, it didn't say they have no, it didn't say it in those bold, but the holding there is based on the fact that it was discretionary relief, I thought. It was, Your Honor, but that certainly is in conflict with this court's prior decisions. And I think it should be interpreted narrowly to the circumstances of Herrera-Paguada. Certainly here, the problem is that case is pretty close to this. I mean, you know, you just told me a minute ago you made the same argument originally. And well, you did. You have two arguments. I don't doubt it. I'm not disputing that. Right. But it's pretty close. It's similar, Your Honor, but here we do have a different situation because we also have the other due process violation, which, as the court has noted, is not simply the denial of his appeal rights, but the affirmative deprivation of his appeal rights by noting that he waived his appeal incorrectly when he did not. But let me ask you this. Do you think that you could still make the argument that they have not, that is, the government has not made, as you did in all your papers, made the argument that there was no constitutional violation here? The government has articulated that they believe there's no constitutional violation in their response brief for the reasons that I've stated and for the reasons that this court has, how this court has approached these questions, I think that they're wrong. Right. But you would say that they have not raised it? I mean, I thought that you were relying on me strongly. I am. But to the degree the court wants to engage with that question, which it can, then our position is the government is wrong. I wonder if they can raise it in their supplemental reply brief for the first time. Typically, Your Honor, the court does not consider, as you know, arguments raised for the first time in a reply, even a supplemental reply. Certainly, the government was aware, even in the initial briefing, that the issue of due process violation from the appeal was also a due process violation that was being claimed. So this isn't a surprise. So I want to address a point. It seems like you made earlier in your discussion with Judge Motz dealing with the Herrera case, a case that basically the Supreme Court is looking at it and says even if the Ninth Circuit is right that this voluntary departure effectually deprives them of the right of opportunity to appeal, the court went on to say that doesn't by itself mean that this underlying removal period violated this due process. So as I understand where you're going with that, is that on the one hand, while this is about effective deprivation of the rights not being enough, it doesn't seem to answer the question about what we have here is actual direct deprivation of the rights. That being a nuanced distinction, but important here because it seems to hold at least in terms of what the process means. So on the one hand, you've got the effective deprivation. Here, what the judge seemed to focus on here is that this is at least, not the judge, but at least what was now before us is the question of whether it's a direct actual deprivation of the rights. That's correct, Your Honor. This is a different situation from a situation like what is referred to in Herrera-Paglada where the alien claims that they were denied the right to appeal because they weren't advised of the relevant information and didn't know that they should appeal. This is a situation where the alien actually couldn't appeal. The immigration judge, by placing a document in the file indicating that the alien had waived his right of appeal, made it so that he couldn't. The BIA won't accept an appeal if it's been waived. In fact, Mr. Sanchez was removed during his appeal period. If you look at the records, his appeal hearing occurred on June, or his removal hearing occurred on June 30th, and he was removed within that 30-day appeal period because the immigration judge circled waived. And once an alien has waived his right to appeal, they don't have to wait out the 30 days for him to appeal. So accepting that our case there, the Herrera case, when we said that, allows for this particular direct actual matter to go forward, still the question of prejudice might remain. And we can discuss that all we want, but if it does, what should we do? Should we just send it back to the district court or do as the government is arguing, no, there's nothing on the record and you have a burden for it? Well, Your Honor, so because the district court dismissed the indictment, I'm not sure that this court can send it back without reinstating the indictment, because there's nothing pending right now. And this presents, frankly, a procedural question I haven't encountered before, but I think that if the court wanted to send it back, it would be because it would have to reinstate the indictment. Our position is that there's no need to do that because the prejudice analysis that the district court used is still good here. It still applies, although the due process violation that we're claiming is a different one, but that denial of his appeal rights still rendered him unable to address these same errors that he raised below. Although these error paguada now gives us that his initial error claim is not a due process violation, it's still an error. It's still something that the immigration court clearly did wrong and that would have been corrected had he had the opportunity to appeal. The BIA would have recognized that the immigration judge applied the wrong standard for pre-conclusion voluntary departure. Under the pre-conclusion voluntary departure standard, which is a very low bar, the alien does not need to show that he has the financial means to depart, as the BIA very clearly recognized in Arguelles Compos. Further, that's not even a discretionary factor that the BIA considers in evaluating voluntary departure. When the district court considered this, it found, and its factual findings are entitled to review under clear error here, that not only was Mr. Sanchez eligible for voluntary departure, but that he had shown a reasonable probability that he would receive voluntary departure and that he would actually depart. He does not need to show as a matter of certainty that he would depart or that he would not have been removed. He only needs to show a reasonable probability. A reasonable probability is a low bar. I think courts have recognized elsewhere that it is a plausibility. Borrowing from the Strickland standard, the court could look at it as evidence sufficient to cast a doubt on the outcome of the proceeding. And certainly we have that here where we can see just plainly the immigration judge applied the wrong standard. Now, this court's decision in Quintero is also relevant to the prejudice inquiry here, because this is another situation much like the very factually similar to this court's decision in Vasquez Flores following Quintero, where the immigration judge failed to develop the record. So he had one question to Mr. Sanchez about his ability to pay, which wasn't a factor that he would inquire into at all. But to the degree that the court considers that relevant, he didn't ask any further questions. He didn't advise him that he would have up to 120 days to depart. He didn't give him any information about why that was so significant to him. Mr. Sanchez had two small U.S. citizen children that he was supporting at that point. And as the district judge properly found, had he known that voluntary departure would allow him to avoid the 10-year bar on reentry that applies when an alien is removed, he would have had very significant incentives for taking voluntary departure and seeking voluntary departure. Under these circumstances where the immigration judge... Did you actually, did the client actually apply for voluntary departure? He was never given the opportunity to. He was never told. I think your argument is really pretty persuasive. The part I don't understand, I guess, is that what it leads me to think is that we should, as my colleague Judge Wynn suggested, send this back. But you said, you eschew that. And I'm really... And you say they'd have to re-indict him. I guess that's right. But I would think that you would rather have him re-indicted and get some of the relief that you think that he would be entitled to, and then maybe clear this all together than to have us just affirm here. If the court is inclined to... If the court feels that there's an insufficient factual basis to find prejudice, if I'm understanding the court's concern correctly that that's the issue here, I think that we do fall within the rubric of Quintero under those circumstances, and that the court should presume prejudice rather than sending it back, because this is exactly the same situation as in Vasquez Flores. That's what this court did in Vasquez Flores. It's a practical matter. What if we think it's also unclear whether or not the government asserted that there was the violation of constitutional right here? Well, if the government isn't challenging the violation... No, no, I didn't say that. Maybe they did challenge it. Maybe they didn't. We can't tell. The government has certainly had the opportunity to assert the violation of constitutional rights. Right. And they have done that in their reply brief, their supplemental reply brief. But I thought you and I just had a dialogue about we usually don't do that. We don't recognize those. So it seems to me there's just a lot of things that would benefit from a remand here. This case was dismissed more than two years ago at this point. Since that time, there's been no case pending against Mr. Sanchez. He's been living his life and pursuing immigration remedies, as the court can see from the final docket entries where his discovery order was permitted to allow his attorney to view his file that was received in discovery in this case. Reinstating, from a practical point of view, reinstating the indictment against him at this point likely would cause difficulties with his immigration case. So from an individual, a human perspective, I think that is one concern that we have. But I think the court doesn't need to do that because the record is sufficient right now for the court to determine that the district judge had it right. And that reviewing the district judge's findings for clear error, there is no clear error in the factual findings as to prejudice. Well, the question of the indictment is interesting. And I'm wondering if we send it back with a limited remand, retain the jurisdiction, do we need a new indictment? I honestly don't know the answer to that question, Your Honor. Well, we're a court. We could probably do it. Well, you know, as you argue, the record itself may contain enough information on it. I mean, something we have to look at. And you also seem to indicate that that evidence would come even because the prejudice from the original argument still is there, at least, and did put a finding there before us. So, I mean, it's possible we could build a record. I'm not saying it will be done. I thought the indictment question was a very good one and interesting. I agree, Your Honor. So, unless the court has any other questions, thank you. Thank you. Ms. Taylor. Thank you, Your Honor. Prejudice in this case must link to a due process violation. Therefore, the first question is whether or not there was a due process violation in Mr. Sanchez's removal proceedings. The only due process violation that was at issue in the proceedings below was the alleged failure to advise regarding voluntary departure. Judge Moon specifically said that Mr. Sanchez did not claim a prejudicial due process violation from a failure to be advised of his appellate rights. Judge Moon issued an order only on the issue of failing to advise a voluntary departure, and the government took an affirmative appeal of that decision. And that's why the government's opening brief does not talk about the appellate right issue because Judge Moon specifically said that Mr. Sanchez did not raise that as a prejudicial due process violation. Of course, a lot of time has passed since the government's opening brief, and in that time was the intervening Herrera-Pagoda decision. This court ordered supplemental briefing regarding that decision. And then Mr. Sanchez raised in his supplemental brief this new argument, this goalpost moving argument, where he pivots and says, All right, we concede that Herrera-Pagoda is dispositive of the issue on appeal that the government has raised. However, we're now going to make this alternative argument about failure to advise of appellate rights being a separate due process violation resulting in prejudice. And the government responded to that argument in its supplemental reply brief, arguing both that that is not a due process violation, and even if it were, there is no resulting prejudice. So in this case, the court must first decide, one, whether or not Judge Moon's opinion holding that there was a due process violation regarding failure to advise voluntary departure was or was not correct. And under Herrera-Pagoda, it clearly was incorrect and needs to be reversed. The next question then would be, is there anything left to decide? To the extent that Mr. Sanchez is also asking this court to decide the question about failure to advise of appellate rights, then that question is also squarely answered in Herrera-Pagoda, because the court there said that failure to advise of appellate rights is a separate requirement. It goes to the prong of 13-2060 regarding an opportunity for meaningful judicial review, quoting the Wilson decision. And that, as I stated before, that just because a failure to advise regarding voluntary departure may effectively or derivatively deprive an alien of an opportunity to appeal on that issue does not amount to a due process violation. And that would be the end of this case. Because there's no due process violation, the court never needs to visit the issue of prejudice. Of course, as in all of these— I wish you had said all that in your brief. Appreciate that, Your Honor, and we will learn from that. But is that the only issue, though? I asked you about it, and you said, do you disagree with what Ms. Trotten said about being able to afford to voluntarily? She said it's not—you disagree with that? I'm so sorry, Your Honor. Disagree that you have to show that you have the money to leave. That's a requirement. At the time of the removal hearing or now on collateral review, Your Honor? At the time of the hearing. At the time of the removal hearing, it was not a requirement for Mr. Sanchez to prove that he had the financial means to depart. I would agree with Ms. Trotten on that. But that's when we look at it. Isn't that the time to look at it in terms of what the effect of an appeal would be? That issue could have been raised as well as the one of whether or not you're being told about. Why isn't it any bigger than that? There are other issues. Respectfully, no, Your Honor, we disagree with that point. So if I understand Mr. Sanchez's argument on this correctly, essentially what he's saying is we admit that there was no obligation for the immigration judge to tell us about voluntary departure. But he should have told me that I could have appealed not getting voluntary departure, which, of course, does not logically follow. But even if the immigration judge had simply told Mr. Sanchez generically, you can appeal. If Mr. Sanchez had actually appealed his removal order on anything other than voluntary departure, then by operation of law, he no longer qualifies for voluntary departure because you only get voluntary departure if you waive your appellate rights. And so the only thing that Mr. Sanchez could have appealed would have been not getting voluntary departure. But that becomes a house of cards and collapses on itself because how could he have appealed not getting voluntary departure if there was no constitutional obligation to advise him of voluntary departure? And so it becomes wholly speculative by Mr. Sanchez. It is a red herring that he would have appealed the IJ's decision, gone up to the BIA. How can you say categorically that's the only thing he could have appealed? What about the issues about many things he may have been able to appeal in terms of due process issues? But if he had appealed anything else other than his voluntary departure eligibility, then he no longer is eligible for voluntary departure. Because in order to reap the benefit, the privilege of voluntary departure under the regulations, you must waive your right to appeal all other issues. And so once he takes an appeal on something else related to his removal order, which he didn't do in this case, but hypothetically, if he were to have done so, then he would no longer be eligible for voluntary departure. And so we have a very circular argument by Mr. Sanchez saying, yes, we understand that he didn't have to advise us of voluntary departure. But he should have told me I could have appealed that nondisclosure because then I could have gone up to the BIA and wholly speculatively, maybe the BIA would have told me, hey, you should apply for voluntary departure. So you're saying that the 4th Circuit, we have no jurisdiction to handle anything with regard to voluntary departure at this point from the Appellate Center. That's what you just said. Categorically, we're out of the game completely. I certainly do not think you're stripped of jurisdiction to resolve the issue. No, Your Honor, I do not mean to go that far. What's left for us to do, the power to do based on your argument? So on collateral review in the context of collaterally attacking an illegal reentry indictment, only in this context, I am not at all opining on this court's appropriate involvement in a direct BIA appeal. That would be an entirely different context. But in the context of a 1326D collateral attack, it is Mr. Sanchez's burden to first establish a constitutional due process violation. And here, this court should hold, consistent with Herrera-Pagoda, that there is no due process violation on the facts and the law of this case. When you're talking about putting somebody in prison, that's different in the context of immigration law. This is a question about it reached to the heart of what due processes and justice is. You're indicting him for the penalty of his liberty, right? This is a criminal charge, right? Yes, Your Honor. Absolutely. And we talk about discretion. It's sort of almost a fiction, even in asylum cases. Even if we found the most egregious violation, am I right? We can't force the attorney general to give anybody asylum. Is that right? I understand that to be correct, Your Honor. So that in itself is a fiction in a sense. If we don't have it that way, we look at constitutional questions and due process issues. You're saying we can just, you know, prison indicted? Well, it doesn't make a difference where he can't. But we assume that, presume that when you can't, you lose your right to appeal, that that is important. That is prejudicial. So we can't sit here and say we don't know what, the mind is a beautiful, wonderful, creative thing in terms of law. But you're saying that's the only thing it could be. And therefore, he's left it. If the district court looked at this matter, you know, and said, no, this is wrong, and an indictment violated our principles of fairness in that situation. I certainly appreciate the spirit of your question and agree with you very much that if the government is presented with a case where an underlying removal order is invalid or there are genuine concerns about that underlying removal order, the government needs to exercise its discretion and tread carefully with a subsequent illegal reentry indictment. I absolutely agree. Yes, but the rule of law does not require the hand of mercy of the executive branch. It is a question of whether or not this court, in terms of his obligation to make sure justice is maintained. So you're saying, well, if we find the hand of mercy, but that's the whole idea of separation of powers. And when it comes to criminal convictions, we're not talking about solely with his full discretion in the executive branch, but not when you're talking about indicting somebody in a criminal case. And that's what the district court was looking at. Yes, Your Honor. And absolutely, this court should very much employ its powers and responsibilities to determine whether or not there was a due process violation in the prior removal proceeding. We fullheartedly agree with that. As a matter of law, however, in this case, there was no due process violation in Mr. Sanchez's prior proceedings. And so they don't constitute fundamentally unfair proceedings. Had there been a due process violation, the government would absolutely acknowledge that the proceedings were fundamentally unfair and would concede the collateral attack in this illegal reentry indictment. But here, Mr. Sanchez's prior removal proceeding did not violate the due process clause of the Fifth Amendment, and therefore, it doesn't constitute as a matter of law a violation of 1326D. And therefore, Mr. Sanchez's collateral attack must fail as a matter of law. And for that reason, we would ask that the district court's decision be reversed and the indictment be reinstated. Thank you so much. Thank you, Your Honors. Ms. Taylor, Ms. Trotten, for your arguments. Appreciate it very much. We can't come down and shake your hand as we would like to do, but know very much that we appreciate your arguments and your presentation today. Thank you. Thank you very much for your time. Thank you.
judges: Roger L. Gregory, Diana Gribbon Motz, James Andrew Wynn